## J. M. KELSO ET AL. v. A. F. REID.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF BEAVER COUNTY.

Argued October 6, 1891—Decided January 4, 1892.

(a) The defendant in assumpsit sold to the plaintiffs a " general country store " for about $6,000, stipulating that he should not " carry on the same kind of business within a radius of two miles, under a penalty of $1,000, to be paid . . . . . as liquidated damages, without proof of loss or damage on their part: "

1. The case being of that class where it is next to impossible to prove the full extent of the damages for the breach of such a covenant, there was a reason why the parties should liquidate them in advance, and why the defendant should be held to the payment of the amount so fixed, if not unconscionable.*

2. The defendant having opened and carried on a business of substantially the same kind, in violation of his covenant, the amount of the damages liquidated therein was not unconscionable, and an offer of the defendant to show that no damages had in fact been sustained by the plaintiffs, was inadmissible.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MCCOLLUM and MITCHELL, JJ.

No. 7 October Term 1891, Sup. Ct.; court below, No. 239 September Term 1889, C. P.

On August 14, 1889, John M. Kelso and Joseph A. Kelso brought assumpsit against A. F. Reid. Issue.

* See Clements v. Railroad Co., 132 Pa. 445.

At the trial, on October 18, 1890, the plaintiffs proved and gave in evidence a contract under seal, executed by A. F. Reid, of the one part, and John M. Kelso and Joseph A. Kelso, of the other part, as follows:

" This agreement made the 21st day of August, A. D. 1883, between A. F. Reid, of New Galilee, Beaver Co., Pa., of the first part, and Jno. M. Kelso and Jos. A. Kelso, of Allegheny Co., Pa., of the second part, witnesseth : That the party of the first part agrees to sell to the parties of the second part all the stock and detached fixtures in general country store heretofore carried on by said first party in New Galilee, Pa., together with the good will of said business, and the said second parties agree to pay therefor a sum or price to be ascertained by taking an inventory and deducting $2\frac{1}{2}$ per cent from the invoice price to the seller ; . . . . . possession of said store and of the dwelling house attached, to be delivered within eight days from date. The said A. F. Reid further agrees to lease to said second parties the said store and dwelling-house for a period of three years, with the privilege of five years, from September 1, 1883, at a rent of $360 per annum, payable quarterly. And the said A. F. Reid further agrees that he will not carry on the same kind of business within a radius of two miles, under a penalty of $1,000, to be paid to the said second parties or their assigns as liquidated damages, without proof of loss or damage on their part.

" Witness our hands and seals,". . . . .

It was then shown that the plaintiffs obtained possession of the stock of goods sold, on September 3, 1883, and paid therefor about six thousand dollars, as per the inventory taken ; that, though the defendant afterward went away from New Galilee, yet about January 1, 1889, he returned and opened up a country store business in the same room that had contained the stock he had sold to the plaintiffs, and continued carrying on the same. The defendant admitted that he was conducting a general country store, but alleged that it differed from the one he trans-, ferred to the plaintiffs, in that it did not have a drug depart- ment, nor a furniture department.

Albert McCready, called for defendant :

" Q. State whether or not Mr. Kelso said anything to you in regard to what effect the starting of this store would have on his business ? "

### Charge of Court below.

Defendant's counsel propose to prove by the witness on the stand, that Joseph Kelso said, a considerable time after the starting of this store by Mr. Reid, that the starting of Reid's store had no effect upon the business : This for the purpose of showing that the damages are unconscionable and grossly disproportionate to the injuries sustained; and, therefore, although it may be expressed as liquidated in the contract, it is nothing but a penalty.

Objected to by plaintiffs' counsel, as irrelevant, etc.

By the court: The objection is sustained. The court holds, as a matter of law, looking at all the facts of the case as they appear from the contract, that the penalty is not so excessive as to affect the issue. If Mr. Reid violated his contract, the plaintiffs have the right, both the legal and moral right, to grasp the one thousand dollars ; exception.[1]

At the close of the testimony, the court, WICKHAM, P. J., charged the jury :

[Now, gentlemen, it was not and is not, of course, too much to expect that the defendant should carry out his contract according to its letter and its spirit;] [6] that he should give the plaintiffs the benefit of all he agreed to give them, not only so far as the goods were concerned, but likewise the good will of the store, and his dropping out of the business within a radius of two miles from the place where he had before been engaged in business. He concedes that, some five years after the making of this contract, he returned to the borough of New Galilee and engaged in business within perhaps eight or ten or twelve rods of the plaintiffs, and has continued therein ever since. But he contends, gentlemen, that he is not in the same kind of a business as he sold plaintiffs, and that is a matter for you to determine under all the evidence.

[You will notice, gentlemen, that the words of the agreement he made are, " that he will not carry on the same kind of business within a radius of two miles." This language means, in law, substantially the same kind of business; otherwise, a man might evade his contract by not dealing in brooms, or cinnamon, or grind-stones, dried peaches, or steel pens, candy, or any one of the thousand and one articles that usually are kept for sale in a good-sized, general country store.

Charge of Court below.

He might say to his vendee, it is true I kept such and such an article prominently displayed for sale, when I was in the business I sold you, but I do not sell it now, although I sell about everything else that I formerly dealt in; therefore, I am not in the same business. Well, gentlemen, the law will not countenance and aid such trickery and evasion as this.] [7] Honest and fair dealing and common sense must govern the construction and the observance of such a contract as we have now under consideration, as well as every contract that is made in the business of mankind.

[In the present case, if the defendant, in January, 1889, opened and thereafter kept, in the borough of New Galilee, at the place that he states himself, what can be properly termed a general country store, selling the same kind of goods therein which constituted, substantially, the subject matter of his sale to the plaintiffs, although he may have dropped out drugs, furniture, or something else, forming only an immaterial part of his former trade or business, he is clearly liable for the one thousand dollars sued on, and your verdict should be against him ; otherwise not.] [5]

In determining, gentlemen, whether he is substantially in the same kind of business as before, you must look, not simply at the allegations of the parties to the suit, but at all the facts and circumstances of the case, including also the character and the proportionate value of the goods sold by the defendant to the plaintiffs. What proportion, in value, did the drugs and furniture, and the sales thereof, bear to the whole business done by the defendant before he sold out to the plaintiffs ? Has the defendant since started up again, and been practically and substantially in the same business he sold to the plaintiffs ?

Now, gentlemen, take a reasonable and common-sense view of the matter, and answer this question, because it is the all important one in the case. [If the business is substantially the same, although he may have dropped out certain articles that he sold before, he is legally liable for the sum claimed by the plaintiffs, but otherwise he is not so liable. This is the whole matter in a nut shell. And I may say here, that any other construction than the one here adopted by the court and put on this contract, would put a premium on dishonest ingenuity.] [8]

Every disputed question of fact must be determined by the

Charge of Court below.

weight of evidence. And every disputed question of fact, you will understand, is left for you, and you alone, to decide.

I may say here with regard to this contract, that the evidence offered by the defendant to impeach it, to show that something else was meant, was totally insufficient in law for that purpose. He failed to show that he was fraudulently induced to sign the written agreement; he failed to show that he did not know its contents. And, although some expressions made by the plaintiffs have entered into the case and have been proved, they would be entirely insufficient in law to set aside the written contract and substitute a new one in its place.

The court is asked by the defendant's counsel to charge as follows:

1. That if the jury believe, under all the evidence, there was no consideration for the agreement that the defendant would not carry on the same kind of business within a radius of two miles, then the verdict should be for the defendant.

Answer: This is refused.[2]

2. If the jury believe that the contract between the parties was fully consummated before the parties came to the office of R. B. Petty, and that the clause in relation to the damages for carrying on the same kind of business was an after-thought, then the verdict should be for the defendant.

Answer: This point is refused.[3]

3. If the jury believe that the defendant is not carrying on the same kind of business, then their verdict should be for the defendant.

Answer: The words " same kind of business " mean in this case " substantially the same kind of business." With this explanation the point is affirmed.

4. The plaintiffs having failed to show any loss or damage to them by reason of defendant's engaging in business in said borough of New Galilee, their verdict should be for the defendant.

Answer: This point is refused.[4]

—The jury returned a verdict for the plaintiffs for $1,000. Judgment having been entered, the defendant took this appeal, assigning for error:

1. The refusal of the defendant's offer.[1]

Opinion of the Court.

2-4. The answers to the defendant's points.[2-4]

5-8. The portions of the charge embraced in [ ] [5-8]

*Mr. John M. Buchanan*, for the appellant.

Counsel cited: Streeper v. Williams, 48 Pa. 450 ; Shreve v. Brereton, 51 Pa. 185 ; Mathews v. Sharp, 99 Pa. 564 ; Pennypacker v. Jones, 106 Pa. 237 ; March v. Allabough, 103 Pa. 335.

*Mr. J. H. Cunningham, Mr. L. E. Grim* and *Mr. D. S. Naugle*, for the appellees, were not heard.

The brief filed cited: McClurg's App., 58 Pa. 51 ; Smith's App., 113 Pa. 579 ; Powell v. Burroughs, 54 Pa. 329 ; Clements v. Railroad Co., 132 Pa. 445.

PER CURIAM :

The learned judge below was clearly right in excluding the testimony referred to in the first specification. The parties having by their agreement liquidated the damages for its breach, any inquiry as to the extent of the injury sustained by the plaintiffs by the starting of defendant's store was irrelevant. This belongs to a class of cases where it is next to impossible to prove the full extent of the damages; and it was for this reason, in part, at least, that the damages were liquidated by the parties themselves. Moreover, the amount was reasonable. It is just as well that persons who sell out their business with its good will, and stipulate as a part of the transaction not to carry on the same business within a given circuit, should understand that it means something, and that for a breach of such covenant they must respond in damages. The court below was right in holding that the penalty was not so excessive as to affect the issue.

The defendant's first, second, and fourth points were properly refused. The portions of the charge embraced in the fifth, sixth, seventh, and eighth specifications are entirely free from error.

Judgment affirmed.